THE CITY OF OLNEY

*v.*

MARY WHARF.

*Filed at Mt. Vernon January 25, 1886.*

1. MUNICIPAL CORPORATION—*granting use of streets for railway purposes—liability to abutting property owners for injury therefrom.* An incorporated city or town may lawfully grant the right and privilege of constructing and operating a railroad in a public street, the fee of which is in the city or town, if it makes all proper and reasonable provisions to protect lot owners and the public in the free use of the same, and in so doing will incur no liability to owners of lots abutting on such street, who must look to the railway company for any damage thereby caused to their property.

2. A railway company being authorized by law to construct and operate its road through an incorporated town which held the fee to its streets, the town authorities by ordinance granted the privilege of constructing the road along the center of a public street, upon condition the company should grade the street and plank its track with two-inch boards, so as to secure, as far

as possible, to the public the free and uninterrupted use of the street, and the road was so constructed, whereby a lot owner, whose lot was on the street, was damaged in consequence of raising the grade of the street and by obstructing the view from his premises, etc.: *Held*, that the town having lawfully granted the right of way, and being guilty of no negligence or wrongful act, was not liable to the lot owner.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of Richland county; the Hon. WILLIAM C. JONES, Judge, presiding.

Messrs. WILSON & HUTCHINSON, for the appellant.

Messrs. ALLEN & FRITCHEY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

On the 10th day of March, 1869, the legislature passed an act to incorporate the Danville, Olney and Ohio River Railroad Company. (2 Private Laws 1869, p. 975.) Under section 1 of the act, the company was authorized and empowered to locate, construct and complete a railroad from Danville, through Olney, in Richland county, to the Ohio river. On the 11th day of October, 1881, the city council of the city of Olney passed an ordinance granting the right of way to the railroad company through the city of Olney, from a point where Camp avenue, when extended due north from its present northern terminus, strikes the right of way of the Peoria, Decatur and Evansville Railroad Company, thence south along the middle of said Camp avenue to the south line of said city. The right of way was granted upon certain conditions named in the ordinance requiring the railroad company to grade the street and plank the track, so as to preserve, so far as possible, the rights of the public in the free and uninterrupted use of the street as a highway. Under the authority conferred by the ordinance, the railroad company entered upon the street and constructed its road, and the plaintiff being the owner of

two lots, occupied as a residence, abutting on Camp avenue, brought her action against the city to recover damages alleged to be sustained in the depreciation of her property, occasioned by the construction and operation of the railroad over and along the street.

It may be fairly inferred, from the evidence, that appellee's property has depreciated in value by the construction and operation of the railroad. A part of the depreciation arose from the running of trains along the street, thus disturbing appellee's quiet enjoyment of her property, a part from the standing of trains opposite appellee's house, thus obstructing her view, and a part from the fact that the railroad company carried the grade of the street somewhat above the level of appellee's lots, and thereby obstructed the ingress and egress. It seems, however, from the evidence, that twenty-five dollars would liquidate the damages arising from a change of the grade of the street. The main damages therefore arose from other causes. But this is not a matter of great importance. The controverted question in the case is, who is liable for the damages sustained. On behalf of appellee it is contended that the city is liable, while on the other hand it is contended by appellant that if a right of action exists in favor of appellee, her only remedy is against the railroad company.

At the request of the plaintiff, the court instructed the jury that if they found, from the evidence, that plaintiff's property was damaged by the construction of the railroad along the street, they should find for plaintiff, and assess her damages at such sum as the evidence shows the property has depreciated in value by the construction and operation of the road. The court also instructed as follows:

"That when a city owns the fee in a street, and grants the right of way to a railroad company to construct its railroad upon such street, the city becomes liable to the owners of abutting property for any damage such owners may sustain by reason of the construction of said road."

Several instructions presenting the opposite view, that the railroad company was not liable in such a case, were asked and refused by the court.

The fee of the street where the railroad company was per-mitted to construct the road was in the city of Olney. As before observed, the legislature had authorized the railroad company to construct its road through the town of Olney. It was therefore a duty resting upon the city council of Olney, upon the application of the railroad company, to designate a street upon which the road might be constructed through the city. This obligation the city discharged by the passage of an ordinance authorizing the construction of the railroad in the center of Camp avenue,—a street eighty feet wide. The ordinance required the railroad company to grade and drain the street, and plank the cross-ties with plank two inches thick, so that the public travel on the street might not be hindered or obstructed. The ordinance also provided that the railroad company should be subject to such police regulations as might be enacted by the city of Olney, and if at any time the railroad company failed or refused to perform its several duties under the ordinance, then the right to use the street for railroad purposes should cease and determine. It will thus be seen that the city of Olney did not act in a hasty or reckless manner in conferring the right on the railroad company to occupy the street, but on the other hand, in the passage of the ordinance the city incorporated into the ordinance such provisions as seemed necessary to protect the rights of property owners along the street, and also the rights of the public in the free use and enjoyment of the street as a public highway.

Is the city liable for damages sustained by the owners of property abutting on the street, for granting permission to the railroad company to construct and operate a railroad through Olney, as authorized by an act of the legislature? Prior to the adoption of our present constitution this court

had held, in at least two well considered cases, that the property owner had no right of action against any person. *Moses v. Pittsburg, Ft. Wayne and Chicago Railroad Co.* 21 Ill. 516; *Murphy* v. *The City of Chicago,* 29 id. 286. In the last case named it is said: "It is the settled law of this court, as well as in most of the other States of the Union, that it is a legitimate use of a street or highway to allow a railroad track to be laid down on it, and for doing so the city is not liable for any damages which may accrue to individuals." In the other case cited, which was a bill against the railroad company to enjoin it from constructing the road on a street, it was held that the property owners could not enjoin the laying of tracks, nor recover damages for the use of the street.

But it is contended that since the adoption of the constitution of 1870, in which it is provided that "private property shall not be taken or damaged for public use without just compensation," the doctrine of the cases cited has been abandoned, and a new rule established, under which the city is liable. The cases relied upon by appellee to sustain a recovery against the city of Olney, are *City of Pekin* v. *Brereton,* 67 Ill. 477, *Stack* v. *City of East St. Louis,* 85 id. 377, and *Rigney* v. *City of Chicago,* 102 id. 64. The first of the cases named was an action brought to recover damages for the making of deep excavations in the street and sidewalk adjoining the lots, so that plaintiffs were injured and deprived of the use of their lots; that there was danger that injury would result from caving and falling of the street, and it did not appear that the fee of the streets was in the city. These were the facts under which the city was held liable. It is plain that a city has no right to make dangerous excavations in the streets, or suffer or permit others to so use the public streets, and if a city allowed dangerous excavations to be made, it might be liable, as held in the case cited. But there is no similarity between that case and the one under consideration. Here all reasonable precaution was taken to protect

the rights of the public in a free and uninterrupted use of the street, after the road should be constructed, in the same manner as before. The ordinance which conferred the right upon the railroad company to use the street, at the same time required that it should be graded, drained, and the ties on the track planked with two-inch plank. Again, as the fee of the street was not in the city of Pekin, the abutting land owners were entitled to additional compensation when additional burdens were imposed, as ruled in *Indianapolis, Bloomington and Western Railroad Co.* v. *Hartley*, 67 Ill. 439, and the city was powerless to confer the right on the railroad company to the use of the street for railroad purposes, where the fee of the street was in the land owners, without compensating them for the additional burdens imposed.

*Stack* v. *The City of East St. Louis*, upon examination will be found to have no bearing here. In that case the city obstructed the street and diverted its use as a public street for travel to another purpose. Those were the circumstances under which the city was held liable. It is there said : "The city has no power to sell, lease, or otherwise appropriate it to other purposes, nor can it be closed or obstructed so as to deprive the public from its use as a highway. * * * It has, however, been held that a city or village may authorize the laying of railroad tracks in their streets,—that such a use is not inconsistent with the trust for which they are held by the city. But in thus permitting them to be used, the city has no right to so obstruct the streets as to deprive the public and adjacent property holders from their use as streets." From this, and, indeed, from the whole tenor of the decision, it is apparent that it has no bearing on such a case as we are now considering.

The other case (*Rigney* v. *The City of Chicago*,) was an action brought by a lot owner against the city to recover damages on account of the construction of a viaduct across a certain street, which prevented the plaintiff from traveling from

his property on the street. Here the street was obstructed, and the usual travel from the plaintiff's premises was stopped, and the city was held liable, for the reason that it had no right to obstruct a public street, and deprive the lot owner of the right to use the streets for the purposes for which they were laid out. But no question arose in the case as to the liability of a city for allowing a railroad the use of the streets, as is here presented, and the case has no bearing on this case.

This court has held in a large number of cases, that the construction and operation of a railroad on a public street, in a city or incorporated town, is a proper and legitimate use of a public street. Our public streets in our cities are designed for travel, but the travel over or upon them is not confined to any one mode of conveyance. They may be used for the wagon, the carriage, or cars propelled by horse power or steam. Each and all may be regarded as a legitimate use of the street by the public. Here the city authorized the construction and operation of the railroad upon a public street, as it had the right to do. All the safeguards were thrown around the power conferred which the nature of the transaction seemed to demand, and if appellee or any other lot owner on the street has been damaged by the construction or operation of the railroad, the city is in no manner liable, but the liability for all damages sustained must fall upon the railroad company. There are cases where a city might properly be held liable to respond in damages for an injury resulting from an act of the city, as in *Nevins* v. *City of Peoria,* 41 Ill. 507, but there is no similarity between that case and this. Here the city of Olney has committed no wrong, nor has it been guilty of any act of negligence, and we perceive no principle upon which it can be held liable. If the city had been guilty of a tort, or acted in a negligent manner, in consequence of which the appellee had been damaged, there

might be some ground for holding the city liable; but such is not the case.

The judgments of the Appellate and circuit courts will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*