## JAMES MAGUIRE v. VILLAGE OF CROSBY.[1]

July 5, 1929.

No. 27,436.

W. B. Cook, for appellant.
Ryan, Ryan & Ryan, for respondent.

HOLT, J.

Defendant appeals from an order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

A jury awarded damages for injury to plaintiff's property caused by a change of grade of the abutting street, which on July 21, 1927, was duly designated by the state highway commissioner as trunk highway No. 2. On August 15, 1927, by resolution, the village council of defendant approved the plans and specifications of the commissioner for the construction of said highway in that street, and consented to the change of grade thereby provided.

[1]Reported in 226 N. W. 398.

The sole question presented by the appeal is: Did the village by the part it took in the change of grade make itself liable for the injury caused to plaintiff's abutting property? The learned trial court held that it did, even though of the opinion that the state was clearly liable.

Art. 16, § 1, of the constitution ordains:

"There is hereby created and established a trunk highway system, which shall be located, constructed, reconstructed, improved and forever maintained as public highways, by the state of Minnesota."

And the general highway act, L. 1921, p. 406, c. 323, enacted to carry out that constitutional provision, in § 8 thereof [G. S. 1923 (1 Mason, 1927) § 2549] states:

"All trunk highways shall be located, constructed, improved and maintained by the state. The state is hereby vested with all rights, title, easements and appurtenances thereto appertaining, held by, or vested in any of the counties or any legal subdivisions thereof, or dedicated to the public use, prior to the time any such road is taken over by the state as a trunk highway."

It would be entirely clear that if the commissioner should locate a trunk highway upon a village street of a greater width than the street the cost of the additional ground is by both the constitution and the highway act imposed on the state. Likewise is the paving of the roadway and its maintenance. In like manner the injury caused by a change of a street grade to abutting property. How completely a city or village is shorn of dominion and control of that part of its streets taken by the commissioner for a trunk highway is manifest from the decision in Automatic S. A. Co. v. Babcock, 166 Minn. 416, 208 N. W. 132. That being so, it should follow that the city or village is relieved from all responsibility for injuries resulting from defects in that part of the street appropriated for the trunk highway; but, as to any part of such street not so appropriated and intersecting streets up to the boundary lines of the trunk highway as located, the liability of the city or village remains.

This suggests other problems that may arise in locating and constructing trunk highways upon city or village streets. For in-

stance, where the established grade of the street is to be changed in the construction of the trunk highway upon it, does the cost of the change of grade of intersecting streets, including the injury to abutting property on such streets, fall upon the state or upon the city or village? And how about subsequent maintenance of and responsibility for defects therein? These and other like problems suggest themselves; but a decision should not now be attempted because the state is not a party to this suit and has not been heard.

Under our present constitution (art. 1, § 13) a change of a street grade which damages abutting property cannot be made without compensation first paid or secured. Dickerman v. City of Duluth, 88 Minn. 288, 92 N. W. 1119; Sallden v. City of Little Falls, 102 Minn. 358, 113 N. W. 884, 13 L.R.A.(N.S.) 790, 120 A. S. R. 635. Vanderburgh v. City of Minneapolis, 98 Minn. 329, 108 N. W. 480; 6 L.R.A.(N.S.) 741, held the vacation of a street which damaged property was valid, although no compensation had been first paid, but gave the owner a cause of action for damages against the city. The vacation there was for the benefit of a railroad company; but, it not appearing that the railroad company had taken exclusive possession of the vacated street or that its use prevented the plaintiff's use thereof, it was held not to have committed a wrong for which it was liable. It is thus seen that an action lies for damages against a city where injury has been caused to property abutting a street by its vacation or change of grade without paying or securing just compensation therefor. The city or village council has the right and authority to vacate streets; and, as appellant properly argues, there was no wrong when the commissioner was authorized to construct the trunk highway in the street and the grade thereof changed; but the wrong which gives the right of action was in authorizing the same when no provision was made first to pay or secure compensation for the damages plaintiff's property sustained. If it was a wrong to appropriate plaintiff's property or damage the same for public use, all who participated in the wrong are liable. That appellant is charged with active participation is clear from the highway act. The scope of the highway act is thus stated:

"The provisions of this act shall be construed as relating solely to roads, not included within the limits of any city, village or borough, except when highways within cities, villages or boroughs are specifically mentioned." [L. 1921, p. 406, c. 323, § 1, G. S. 1923 (1 Mason, 1927) § 2542.]

The other place where city, village or borough is mentioned relative to a subject of some bearing on this appeal is in L. 1921, p. 406, c. 323, § 13, subd. 3 [G. S. 1923 (1 Mason, 1927) § 2554, subd. 3], reading:

"No portion of the trunk highway system lying within the corporate limits of any borough, village or city shall be constructed, reconstructed or improved unless the plans and specifications therefor shall be approved by the governing body of such borough, village or city before such work is commenced, nor shall the grade of such portion of the trunk highway system lying within such corporate limits be changed without the consent of the governing body of such borough, village or city."

Clearly the work upon village streets appropriated by the order of the commissioner for a trunk highway is subject to the control of the village both as to plan of construction and grade of the street. It required the joint action of the commissioner and village council to change the grade as was done.

City of Chicago v. Jackson, 196 Ill. 496, 63 N. E. 1013, 1135, held the city liable for a change of street grade authorized by an ordinance, but actually made by an elevated street railway.

Turner v. City of Portland, 114 Me. 454, 96 A. 742, is cited by respondent and the trial court but is of little value, because the city there let the contract which involved a change of grade, though the state paid the city for the cost of constructing the highway upon the street.

Tishomingo County v. McConville, 139 Miss. 589, 104 So. 452, where both the county and the village were held jointly and severally liable for damages to property abutting a road constructed upon a village street, is more to the point in that the law there re-

quired the consent of the village, as in this state, to the construction of the road, but the statute is not similar to ours in other respects. There the county let the contract and did the work on the highway located upon the street and thereby changed the grade with the permission of the village.

McMullen v. Village of Marlborough, 163 App. Div. 73, 148 N. Y. S. 505, also cited as sustaining the court below, is different on the facts. There the legislature laid the highway on Main street in the village. Landing street intersected Main street, and to conform to the road as constructed on Main street the state raised the center of Landing street opposite the plaintiff's lot two or three feet. The village had no voice in the matter—different from the instant case. Afterwards the village raised the remainder of Landing street and built a retaining wall on the plaintiff's property line so as to extend the whole street to the grade of its center 16 feet, as left by the state. The village was held liable for the damage the plaintiff sustained. Of course there the village did part of the actual work, but it was held liable for the entire damage occasioned by the change of grade. There are authorities holding a city or village responsible for damages to abutting property by a change of grade authorized by the municipality, although the physical change was made by others.

In addition to Dickerman v. City of Duluth, 88 Minn. 288, 92 N. W. 1119, and those above cited, may be added City of Colorado Springs v. Stark, 57 Colo. 384, 140 P. 794; Bentley v. City of Atlanta, 92 Ga. 623, 18 S. E. 1013; Stack v. City of East St. Louis, 85 Ill. 377, 28 Am. R. 619. The only authority to the contrary is Jordan v. City of Benwood, 42 W. Va. 312, 26 S. E. 266, 36 L. R. A. 519, 57 A. S. R. 859. The cases therein referred to as precedents, such as Burkam v. O. & M. Ry. Co. 122 Ind. 344, 23 N. E. 799; Frith v. City of Dubuque, 45 Iowa, 406; Green v. City of Portland, 32 Me. 431, did not involve change of grade authorized by the municipality. City of Olney v. Wharf, 115 Ill. 519, 5 N. E. 366, 56 Am. R. 178, likewise does not indicate that the city authorized the change of grade the railroad made in the street on which it was permitted to lay its track, and no particular effect was given to the damage

occasioned by a disturbance of the grade because of its small amount ($25).

Much reliance is placed by appellant upon Austin v. Village of Tonka Bay, 130 Minn. 359, 153 N. W. 738, but the obvious distinction is that under the statute there applicable the village took no part and could take no part in the change of grade made by the county when it built the road. Here no change could be made without the village first authorizing and approving thereof. In the decision the change of grade without payment of damages to abutting property is spoken of as an invasion of the rights of the owner. It is in the nature of a tort, and all who direct or authorize a tort are liable for the damages directly resulting.

We do not consider that Sather v. City of Duluth, 123 Minn. 300, 143 N. W. 906, has much bearing on the question before us, for the controversy there was as to who was entitled to the damages caused by a change of grade, the one who was owner when the paper change was made or the one who was the owner at the time the city made the change upon the ground. It was held that the latter was entitled thereto.

In this connection it is not amiss to suggest whether the legislature, in being so careful to have an agreement between a city or village and the commissioner both as to the manner of constructing a trunk highway upon a street and also as to any change of grade, contemplated that both parties might be so interested in the project that agreements between them can be made relative to claims such as this. There is some provision looking in that direction contained in § 16 of the act [G. S. 1923 (1 Mason, 1927) § 2557]. At any rate, by holding that a city or village is liable to abutting owner for the damage on account of change of grade the municipality can readily protect itself by refusing to permit such change until the commissioner agrees to reimburse for such damages or to have them determined in a proceeding brought by the state. We know of no way by which the property owner injured could sue the state direct. Injunction against the commissioner or those in the physical act of changing the grade might not give adequate relief.

The order should be and is affirmed.