**Gene FOOTE, et al., Respondents,**

v.

**CITY OF CROSBY, Appellant.**

**No. 50574.**

Supreme Court of Minnesota.

June 19, 1981.

Rehearing Denied Aug. 5, 1981.

Witter & Wendland, Crosby, for appellant.

Erickson, Casey & Erickson, Brainerd, for respondents.

Warren Spannaus, Atty. Gen., and Louis Robards, Sp. Asst. Atty. Gen., St. Paul, amicus curiae.

TODD, Justice.

Defendant City of Crosby appeals from an order of the Crow Wing County District Court refusing to dissolve a temporary injunction and making that temporary injunction permanent. The sole issue on appeal is whether the trial court erred by enjoining the city from removing shade trees located within the platted right-of-way of a city street as part of a municipal street improvement project. The trial court's injunction was based on the theory that the removal of the trees constituted a compensable taking and that, therefore, condemnation proceedings must be commenced to prevent irreparable harm. We cannot agree and, accordingly, reverse.

Plaintiffs Gene and Joan Foote own a home on Cross Avenue in the City of Crosby which they rent out. The platted right-of-way of Cross Avenue is 80 feet wide and extends to approximately 6 inches from the front steps of the house. The center 32 feet of the right-of-way are presently paved. Next to the pavement is a 10-foot wide grassy boulevard, and then a 4-foot side-

walk. On the boulevard are four large healthy elm trees which have been maintained by the Footes over the years. The area is zoned single-family residential and pedestrian traffic is light. Although the trees have cracked and heaved the sidewalk, there have been no complaints that the trees impede foot travel. The area 1 block to the north is zoned industrial, and vehicular traffic on Cross Avenue is somewhat heavier than pedestrian traffic because a lumber company is located in that zone. There is no suggestion that the trees interfere with motorized travel.

The city is currently engaged in an extensive municipal improvement project prompted by the need for storm sewers. Following drainage studies, the city resolved to construct a storm sewer system. As planned, it includes a lateral line under Cross Avenue. To provide proper grade for drainage, Cross Avenue is to be torn up entirely and lowered. The city decided to replace it with an upgraded 9-ton road, widened to 44 feet, and to install new curbs and sidewalks. The city's plans call for removal of the four trees because root cutting necessary to accommodate them to the change in grade and repositioning of the curb and sidewalk would likely kill them or cause them to topple, and, if they survive, their roots will damage the new curb and sidewalk.

The Footes petitioned the district court to enjoin removal of the trees. The district court granted the injunction, reasoning that although removal was necessary to attain a public purpose, it constituted a compensable taking because the Footes had a vested property interest in the trees. In the view of the district court, the injunction would be dissolved once the city commenced condemnation proceedings. The city appealed.

We first considered the question of a city's right to remove trees located within a platted right-of-way as part of an improvement project in *West v. Village of White Bear*, 107 Minn. 237, 119 N.W. 1064 (1909). We adopted the general rule that "an abutting landowner owns to the middle of the platted street, and * * * the soil and its

appurtenances, within the limits of the street, belong to the owner in fee, subject only to the right of the public to use or remove the same for the purpose of improvement." 107 Minn. at 239, 119 N.W. at 1065; 10 E. McQuillin, The Law of Municipal Corporations § 30.66 (3d ed. 1981). Since in *West* the street widening project for which the trees were to be removed would have served no useful purpose, the landowners were held entitled to an injunction.

We have also considered the extent of a city's right to remove trees or other encroachments on the right-of-way claimed to interfere with travel by the public. The rule is that an abutting owner may use his ½ of the roadway in any manner compatible with use by the public of its easement. Thus, where an alley had never been used by the public as a route of travel and was, in fact, too steep to be suitable for such use, a city was not entitled to remove a tree and woodshed located within the right-of-way. *Pederson v. City of Rushford*, 146 Minn. 133, 177 N.W. 943 (1920). Moreover, an encroachment must be clearly an obstruction to the public easement before a municipality may remove it without an adjudication that it is, in fact, an obstruction. Thus, summary removal of steps and a retaining wall, which were constructed despite warnings from the city, encroached 2½ to 3 feet on the right-of-way, and made likely dangerous accumulation of ice and snow on the sidewalk, was proper. *Kelty v. City of Minneapolis*, 157 Minn. 430, 196 N.W. 487 (1923). However, summary removal of a wall which encroached 2 feet onto a 20-foot wide alley and adjoined a barn which encroached 1 foot was a compensable taking. *Kochevar v. City of Gilbert*, 273 Minn. 274, 141 N.W.2d 24 (1966).

Applying these general principles to this case, we conclude that the district court decision is in error. The district court correctly determined that the Footes, by virtue of their fee ownership to the center of the street, have a property right in the trees. The district court failed, however, to cor-

rectly characterize that right as subordinate to the right of the public to improve the streets. In so concluding, we are not unmindful of our cases holding that damage to abutting property by a change in street grade or other public improvement is compensable. *See Sallden v. City of Little Falls*, 102 Minn. 358, 113 N.W. 884 (1907). That rule pertains to abutting property; that is, property whose lot line and the street line are common and thus has no application where the allegedly damaged property is within the street. 13 E. McQuillan, The Law of Municipal Corporations § 37.253 (rev.vol.1971), states: "[W]here the trees are within the lines of the street or sidewalk on which grading is done, the municipality is not liable to [the] abutting owner, should their destruction become necessary in the proper execution of the work." In view of the trial court's now indisputable findings that the improvement project was a proper exercise of police power, that it encompassed a public purpose, and that removal of the trees was necessary to its implementation, there is no basis for an award of damages.

 Moreover, the record reveals that the trees constitute a clear obstruction to the public easement of travel as it is proposed to be exercised under the improvement plan. This distinguishes this case from those in which actual or proposed removals were of encroachments that did not interfere with public use or improvements. Lowering Cross Avenue will require such extensive cutting of the elms' roots that the trees will likely die, or, if not, they will be vulnerable to wind. If they survive, their height above the street and sidewalk will increase snow removal difficulties, and the new roots that they grow to replace the cut ones will break up the new curb and sidewalk. Thus, under both lines of our prior cases, the city was entitled to remove the elms.

 The district court also suggested that the city had lost the right to remove the trees by abandonment. In *City of Rochester v. North Side Corp.*, 211 Minn. 276, 1 N.W.2d 361 (1941), this court found

abandonment of a city street where the street remained unopened for 83 years, the street actually used was located to the north of the platted street, and the landowner had constructed permanent improvements on the platted street with the city's approval. None of these factors is present here. In addition, the city has continually used Cross Avenue and its sidewalk and would not normally be expected to make specific use of the boulevard between them. We cannot conclude that the equities favor an estoppel.

On appeal plaintiffs, who prevailed below, attempt to raise various issues concerning the proceedings before the city council and the district court. None of these issues was preserved by a timely notice of review, and we therefore decline to reach them.

Reversed.

YETKA, Justice (dissenting).

The majority refers to our prior decisions holding that trees may not be removed from city streets when their removal would be unnecessary, when the streets are unusable or have been abandoned, or when the trees do not present a clear obstruction to public travel. From this collection of cases, the majority concludes that the City of Crosby is entitled to remove four elm trees from the Footes' property without paying any compensation. In reaching this conclusion, the majority ignores an important line of cases that should compel us to affirm the trial court's order in this case. For this reason, I dissent.

Our constitution mandates that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn.Const. art. I, § 13. If the Footes' four elm trees are private property and if the City of Crosby's new street is for the public use, then our constitution requires that the city pay for destruction of these trees. Such a result is not without precedent.

Once a public body establishes a street, owners of abutting property have a right to rely on the permanence of the street. If

use of the street is altered, or the grade of the street is changed so that adjacent property is damaged, the property owner is entitled to compensation. *Cf. Johnson Bros. Grocery v. State*, 304 Minn. 75, 229 N.W.2d 504 (1975) (awarding compensation because conversion of road into limited access freeway destroyed public access to business resulting in damage). We recognized the following rule in *Sallden v. City of Little Falls*, 102 Minn. 358, 113 N.W. 884 (1907):

> Under [constitutional provisions stating that private property shall not be taken or damaged for public use without just compensation] the authorities are nearly uniform in holding the municipality liable for *consequential damages* caused by a change from an established grade; i. e., where a grade is once established by public authority, and private property is improved with reference thereto, a subsequent alteration or change in that grade to the damage of abutting property renders the municipality liable.

*Id.* at 359–60, 113 N.W. at 884 (emphasis added); *see Maguire v. Village of Crosby*, 178 Minn. 144, 146, 226 N.W. 398, 399 (1929); *Sather v. City of Duluth*, 123 Minn. 300, 301, 143 N.W. 906, 906 (1913); *Wallenberg v. City of Minneapolis*, 111 Minn. 471, 476, 127 N.W. 422, 423, *on reargument*, 111 Minn. 477, 478–79, 127 N.W. 856, 856 (1910) (per curiam).

Cross Avenue has an existing grade. Because the trees stand in the boulevard between the street and the sidewalk and because they were planted after the street was platted, the trees presumably were planted as improvements to the property made with reference to the existing grade. It is the proposed change in grade of Cross Avenue that will require the trees to be destroyed. Thus, this case fits squarely within the *Sallden* rule. The Footes should be entitled to consequential damages from the City of Crosby for the destruction of their trees.

Consequential damages include any reduction in value of the abutting land. *See Victor Co. v. State*, 290 Minn. 40, 44, 186 N.W.2d 168, 171–72 (1971); 2A *Nichols on Eminent Domain* § 6.4432[2], at 6–180 to –181 (3d rev. ed. 1969). The destruction of trees caused by a change of grade is included within the damages that are recoverable. *See id.* § 6.4441[11].

The majority attempts to distinguish *Sallden*, claiming that compensation is proper only for damage outside the line of the street. easement. *Sallden* cannot be interpreted that way. The language of that case makes it clear that the focus should be on property improvements destroyed by a change in the established grade, and that is exactly what is presented in this case. *See, e. g., McEachin v. City of Tuscaloosa*, 164 Ala. 263, 51 So. 153 (1909) (allowing compensation even though city owned tree that was destroyed by street improvement); *Cook v. City of Ansonia*, 66 Conn. 413, 34 A. 183 (1895); *Seaman v. Borough of Washington*, 172 Pa. 467, 33 A. 756 (1896).

Destruction of trees to widen a city street is no less a taking than demolition of a private residence. Once a street is paved, owners of abutting property have a right to expect that the grade will be permanent and their future improvements will not be damaged or destroyed. The majority's contrary holding breaks away from more than 70 years of established precedent and runs afoul of the clear language of our constitution. Even when the grade of a city street has remained unchanged for half a century, property owners will now have to bear all of the risks of improving their land. If their improvements interfere with future grading of the street, they might bear tremendous losses, yet the public body will not compensate them for the damage it has caused.

WAHL, Justice (dissenting).

I join in the dissent of Justice Yetka.